**David B. FEINGOLD, Appellant**

v.

**UNITED STATES of America, Appellee.**

No. 94–3351.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 11, 1995.

Decided March 6, 1995.

Terence Joseph Lynam, Washington, DC, argued (John M. Dowd, Terence J. Lynam and Melissa H. McNiven, on the brief), for appellant.

Matt J. Whitworth, Kansas City, MO, argued (Stephen L. Hill, Jr. and Matt J. Whitworth, on the brief), for appellee.

Before LOKEN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and JONES,* Senior District Judge.

JOHN B. JONES, Senior District Judge.

David Feingold appeals his conviction for bank fraud, 18 U.S.C. § 1344; false entries in bank records, 18 U.S.C. § 1005; false statement to a bank examiner, 18 U.S.C. § 1001; and making a false statement in a document submitted to the FDIC, 18 U.S.C. § 1007. For the reasons below, we affirm the convictions.

I.

David Feingold was the President and Chief Executive Officer of Metro North State Bank in Kansas City, Missouri. The bank was an insured member of the Federal Deposit Insurance Corporation (FDIC). Feingold, along with a trust benefiting family members and friends, owned the corporate stock of the bank. The bank lent money to a developer, Gerald Biehl, for a shopping mall project in Illinois. Due to cost over-runs and mismanagement, the project experienced financial problems prior to completion when Biehl had reached his legal borrowing limit with the bank.

Feingold instructed Biehl to get a capital infusion for the project. When Biehl couldn't find an equity partner or other source of cash, Feingold contacted Frank Crivello, a Milwaukee real estate developer and Metro North State Bank customer.

Feingold and Crivello arranged for Metro North State Bank to make a nonrecourse loan of $3,000,000, secured by stock owned by Crivello. At Feingold's direction, the loan documents prepared for the bank's loan committee and Board of Directors indicated that the purpose of the loan was for capital improvements on various K–Mart centers owned by Crivello. Crivello took this money and put it into Biehl's Illinois shopping mall project in exchange for an option to purchase 50% of the project. Crivello was to arrange close-out financing for the project, but this never happened.

Feingold issued a "side letter" to Crivello releasing the collateral after the loan was approved. The loan files and documentation made available to FDIC and state bank examiners made no mention of the loan proceeds being used for Biehl's project, and did not include the letter to Crivello releasing the collateral for the loan. The side letter was instead kept in a separate file by loan officers or executives of the bank.

Feingold resigned as President and CEO of the bank in March of 1992. In June of that year, the FDIC received a tip about the Crivello loan and the side letter which had been kept from bank examiners. The bank at that time had the FDIC's lowest safety

* The HONORABLE JOHN B. JONES, Senior District Judge for the District of South Dakota, sitting by designation.

and soundness rating given member banks. A surprise examination was held at the bank. The side letter was discovered in a "working file" in the new President's desk. The Biehl and Crivello loans were investigated, and Feingold's statements to examiners and answers to questionnaires in previous examinations were reviewed.

As a result, a five-count indictment was handed down charging Feingold with bank fraud and false statements to bank examiners. A loan officer at the bank was named as a co-defendant and tried separately after Feingold. The jury convicted Feingold on all five counts. He now appeals that conviction, raising the issues addressed below.

## II.

### 1. Sufficiency of Jury Instructions.

■ The jury instructions did not include a definition of a nominee loan. Feingold contends that the prosecution's theory of the bank fraud count of the indictment was based on the Crivello loan being an illegal nominee loan, and therefore would require that the legal definition be given in the jury instructions. The jury did hear testimony from both prosecution and defense witnesses on what constitutes an illegal nominee loan. However, the elements of bank fraud do not include a requirement that the loan was a nominee loan in this case.

■ The trial court has broad discretion to instruct the jury, which will not be disturbed on appeal unless the instructions, taken as a whole, are "confusing or misleading in presenting the principles of law applicable to the case." *Grogan v. Garner*, 806 F.2d 829, 836 (8th Cir.1986) (citation omitted). The instructions given on the elements of bank fraud are essentially the pattern jury instructions for this circuit. The elements of this crime do not require proof that the Crivello loan was a nominee loan. The instructions therefore do not misstate the law and we are satisfied that the instructions clearly and properly explained to the jury the legal principles governing the case.

### 2. Admission of Out–of–Court Statements.

■ Co-defendant Brad Morehouse was an loan officer at the bank who was alleged to have participated in the bank fraud with Crivello and Feingold. Morehouse refused to testify at Feingold's trial; he was to be tried later himself. Certain statements made by Morehouse to others were admitted under hearsay exceptions by the trial court. Feingold alleges this was reversible error.

There was sufficient testimony of the existence of a conspiracy between Feingold and Morehouse to allow the admission of these statements under the co-conspirator exception to the hearsay rules. Fed.R.Evid. 801(d)(2)(E); *United States v. Lewis*, 759 F.2d 1316, 1339 (8th Cir.), *cert. denied*, 474 U.S. 994, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985). The statements were made in furtherance of the conspiracy as they related to the terms or conditions of the Crivello loan and who knew of its true nature. Any error in the trial judge's method of determining admission under the rule was clearly harmless error.

### 3. Prosecutor's Comments During Closing Arguments.

■ The jury was properly instructed that closing arguments or other things said by the attorneys during trial were not evidence. The prosecutor's comments during his rebuttal closing argument touched on the credibility of witnesses and argued strongly that Feingold was indeed guilty of the crimes charged. Feingold alleges that the unrebutted remarks were unduly prejudicial and altered the burden of proof. Counsel at trial objected only to the prosecution's remarks about the veracity of a loan officer's testimony about the Crivello loan purpose and documentation. There is no abuse of discretion shown in allowing this argument, and the other comments which did not garner objections at trial are not plain error. *United States v. McMurray*, 20 F.3d 831, 834 (8th Cir.1994).

### 4. Sufficiency of the Evidence.

■ The record reveals that the evidence was sufficient to support the convictions on all five counts. Crivello's testimony, coupled

with the testimony of a loan officer who prepared the bank's internal loan documentation, establish that Feingold knowingly and intentionally executed a scheme to defraud the FDIC insured bank. *See* 18 U.S.C. § 1344. The evidence indicated that Feingold's intention was to provide funds for Biehl's project beyond the bank's legal lending limit through Crivello in a way so that the bank loan committee and its directors did not know the true purpose of the loan or the nature of the risk involved. *United States v. Marx*, 991 F.2d 1369 (8th Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 618, 126 L.Ed.2d 582 (1993).

The evidence also supports a conviction on the counts regarding false entries in bank records under 18 U.S.C. § 1005. The bank examiners who testified as to the loan documents for the loans in question establish the false entries, and other testimony established that Feingold directed the documentation in this manner. Likewise, the evidence supports the conviction on the count alleging false statement to an FDIC bank examiner under 18 U.S.C. § 1001. The materiality of the statement and its falsity were established through testimony regarding the statement in question. Finally, the count alleging that Feingold submitted a false FDIC Officer's Questionnaire is supported by ample evidence to prove that Feingold answered the questionnaire with the knowledge that it was false as it related to the Crivello loan and its ties to the Biehl project, and that it was submitted in an effort to further hide the true nature of the loan from the FDIC. *See* 18 U.S.C. § 1007; *United States v. Haddock*, 956 F.2d 1534, 1542 (10th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 88, 121 L.Ed.2d 50 (1992).

*5. Denial of Motion to Suppress Electronic Surveillance Evidence*

■ The investigation into possible bank fraud by Feingold came as a result of a tip to the FDIC from a loan officer of the bank. The FDIC secured the key documents regarding the Crivello and Biehl loans as a result of a surprise safety and soundness examination specifically targeting those loans. The FBI became involved in the in-vestigation following this examination. Another independent FBI probe of people associated with the bank involved the use of electronic surveillance which may have intercepted phone calls by Feingold relating to this case. The FBI reviewed its tapes from the other case but found nothing to materially further its investigation of Feingold's bank fraud in the Crivello loan.

Feingold moved to suppress all evidence derived from the electronic surveillance. After an exhaustive two-week hearing in front of a United States Magistrate Judge, the trial court accepted the report and recommendation denying the motion. We find no error in this denial. The Magistrate Judge properly focused the hearing on the independent source exception to the Fourth Amendment exclusionary rule. The evidence at trial was derived from a source independent of the allegedly improper electronic surveillance and was not tainted by the surveillance. *See United States v. Matlock*, 415 U.S. 164, 177, 94 S.Ct. 988, 996, 39 L.Ed.2d 242 (1974).

III.

Accordingly, we affirm the conviction in all respects.