# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1126

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Kenneth White, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 9, 2003

Filed: January 26, 2004

_____

Before SMITH, LAY, and BRIGHT, Circuit Judges.

_____

SMITH, Circuit Judge.

Kenneth White appeals his conviction for being a felon in possession of a firearm.[1] White contends the clerical deficiencies in a police search warrant and in the district court's[2] jury instructions should invalidate his conviction. We disagree and affirm.

_____

[1] 18 U.S.C. § 922(g)(1).

[2] The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

I.

On February 26, 2002, based on evidence obtained through a confidential informant ("CI"), Officer Joseph Crews sought a search warrant to search 3515 Minnesota Street in St. Louis, Missouri. In the affidavit, Crews stated that a week earlier, a CI visited White's residence and reported the visit to Crews. While at White's residence, the CI observed White (known to the CI as "Stink") in possession of crack cocaine, heroin, and marijuana and saw him sell narcotics to several individuals. The CI also informed Crews that White protected his business with a handgun and a rifle stored at the residence. The affidavit showed that within twenty-four hours of the warrant application, Officer Crews and another officer had surveilled the residence twice. Each time, they observed several individuals enter the residence, stay briefly, and then leave.

Crews presented the search warrant application and affidavit to a state court judge on February 26, 2002. The judge acknowledged Officer Crews's signature on both documents, and the date and time were entered at the bottom of the application and affidavit. The judge found probable cause and issued the warrant. In doing so, he specifically referenced the warrant application and affidavit. The dates on the affidavit and the warrant application did not match. A typewritten date of February 13, 2002, appeared on the warrant, rather than February 26, 2002, the actual date of the warrant application.

Officer Crews testified that the date of February 13, 2002, appeared on the warrant due to a clerical error. Officer Crews used a pre-typed search warrant application form in applying for the warrant. The date of February 13, 2002, from a previous warrant application remained in the date space; however, Crews failed to change the date to February 26, 2002, when he submitted the application. The previous date was in a different typeface than the information entered on February 26, 2002. Neither the affiant nor the judge noticed the clerical error, and the warrant was signed and dated by the judge on February 26, 2002.

On February 28, 2002, Officer Crews and approximately ten other officers executed the search warrant seeking cocaine, heroin, marijuana, weapons, currency, and other items identified in the warrant. Upon arrival, the uniformed officers knocked on the door and loudly announced their identities and that they had a search warrant. After receiving no answer, the officers forced open the door to the home.

Upon entry, the officers found five individuals, illegal narcotics, and a handgun. One male, later identified as White, was found in the bathroom. They asked White whether his nickname was "Stink," and he said "yes." The officers then performed a pat-down search (for officer safety) of White. During the pat-down, the officers found marijuana in the pocket of White's pants. As Officer Crews grasped the marijuana, White said, "[i]t's just weed." They also found crack cocaine and keys in the front pocket of White's pants. At this point, White was read his *Miranda* rights and placed under arrest.

During the search, the officers noticed a locked cabinet in White's bedroom. The officers unlocked the cabinet with one of the keys found on White's person, and found heroin, marijuana, currency, a scale, a blender, and a Sturm Ruger .357 revolver. After the search was complete, White was advised of all of the items seized. White was again read his *Miranda* rights. White stated that he understood his rights. According to the officers, he did not appear to be under the influence of any drugs or alcohol. An officer asked White if he wanted to talk about anything that had transpired, and White responded by saying that his life was over and that he had nothing to lose.

On March 14, 2002, the federal grand jury returned a one-count indictment charging White as a felon in possession of a Sturm Ruger .38 revolver. However, the gun found at White's residence was a Sturm Ruger .357 revolver. White's trial commenced on October 7, 2002. The jury found White guilty of being a felon in possession of a firearm. On December 27, 2002, the district court issued a final

judgment of conviction and sentenced him, finding White in violation of 18 U.S.C. § 922(g)(1) for being a felon in possession of a firearm. This appeal followed.

## II.

On appeal, White argues that the search warrant used to search his residence was facially invalid because of an incorrect date. White also claims that the confiscated drugs and drug-related evidence were inadmissible as evidence of a violation of 18 U.S.C. § 922(g)(1). Lastly, White argues that the jury instructions were misleading and caused the jury to speculate. We will review each of these contentions in turn.

## A.

First, White asserts that the district court erred in denying his motion to suppress evidence seized in the search, arguing that, because of an incorrect date typed on the pre-printed application form, officers obtained evidence in violation of his Fourth Amendment rights. In reviewing a denial of a motion to suppress, we examine for clear error the factual findings underlying the district court's denial of the motion and review de novo the ultimate question of whether the Fourth Amendment has been violated. *United States v. Allen*, 297 F.3d 790, 794 (8th Cir. 2002) (internal quotations omitted). We will uphold the district court's denial of a motion to suppress if it had a substantial basis for concluding that probable cause existed. *United States v. Smith*, 63 F.3d 766, 768 (8th Cir. 1995). Our review convinces us that sufficient credible information supported a finding of probable cause for the issuance of the warrant.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Under the standard established in *Illinois v. Gates*, 462 U.S. 213 (1983), the task of a judge issuing a search warrant is to determine if a warrant sufficiently describes the

place to be searched, enabling the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that other premises might be mistakenly searched. *United States v. Nichols*, 344 F.3d 793, 797 (8th Cir. 2003). The duty of a reviewing court is simply to ensure that the judge had a substantial basis for concluding that probable cause existed. *Illinois*, 462 U.S. at 238–39. "Courts are to interpret affidavits in a nontechnical, common-sense fashion, and the [judge's] determination of probable cause is entitled to great deference." *United States v. Arenal*, 768 F.2d 263, 266 (8th Cir. 1985).

White's challenge to the validity of the warrant is without merit. White urges that the incorrect date on the face of the warrant renders it invalid for lack of sufficient probable cause. We disagree. Our court recently addressed the technicality issue in *United States v. Thomas,* 263 F.3d 805, 806 (8th Cir. 2001). In *Thomas*, police officers searched appellant's apartment at 3202 South 62nd Street, but the warrant used by the officers contained a previous address occupied by the appellant. *Id.* The officer prepared a search warrant for the appellant's previous address five days earlier, but had decided not to execute the warrant. Within six days, however, the appellant moved to a new address, and the officer overseeing the case began surveilling the new apartment. Less than ten days after the first warrant request was drafted, the officer prepared an application and affidavit, which included the proper address and a detailed description of the premises to be searched, in support of the warrant. *Id.* However, the officer used the previous warrant he had prepared and forgot to update the address. *Id.* at 807. Neither the issuing judge nor the officer noticed the incorrect address on the warrant. *Id.* We reasoned that the officer made an error by submitting the wrong address; however, the warrant could be saved under the good-faith exception.[3] *Id.* at 808. As a result, we concluded that the wrong address

---

[3] In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court carved out a good-faith exception reasoning that evidence should not be suppressed where police officers rely in reasonable good-faith on a properly-obtained warrant that proves to be invalid.

found in the warrant was nothing more than a clerical error and that the officers in good-faith relied on the warrant and should not be punished for the judge's oversight. *Thomas*, 263 F.3d at 809. We held that despite the clerical error, the issuing judicial officer, as the final reviewing authority, bears the primary responsibility for ensuring the accuracy of the warrant. *Id.* at 809

Here, the inconsistency between the date on the warrant-application form and the date on the search warrant does not eliminate probable cause. The warrant described the premises and items to be seized with particularity. Crews testified that it was common practice for him to re-use application forms when applying for a search warrant. Crews failed to change the date typed onto his pre-printed application form. The district court found Crews's testimony of a clerical error credible. Based upon our review, the district court's denial of White's motion to suppress was not clearly erroneous.

## B.

Second, White claims that evidence of his drug possession was inadmissible at trial because this evidence was not probative of firearm possession. White argues that the court abused its discretion under Federal Rule of Evidence 403[4] in denying his motion to exclude certain prejudicial evidence. Specifically, White asserts that admitting evidence of drug possession or drug dealing in the prosecution of the charge of a felon in possession of a firearm deprived White of a fair trial. Reviewing the relevant precedents and evidence rules, we conclude that the district court did not abuse its discretion.

---

[4] Fed. R. Evid. 403 states in part, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."

-6-

Evidentiary rulings of the district court are reviewed under an abuse of discretion standard. *United States v. Becht*, 267 F.3d 767, 770 (8th Cir. 2001) (citing *United States v. Phelps*, 168 F.3d 1048, 1054 (8th Cir. 1999)). Great deference is given to the district court's determination in balancing the prejudicial effect and probative value of evidence of other crimes. *United States v. Simon*, 767 F.2d 524, 526 (8th Cir. 1985). We will reverse only when the evidence admitted clearly has no bearing on any issue involved. *Id.*

Rule 404(b)[5] is a rule of inclusion rather than exclusion and admits evidence of other crimes or acts relevant to any issue in the trial, unless it tends to prove only criminal disposition. *Simon*, 767 F.2d at 526. A trial judge acts within his sound discretion in admitting evidence of wrongful acts when the evidence is relevant to an issue in question other than the defendant's character; clear and convincing evidence exists that the defendant committed the prior wrongful act; and the potential unfair prejudice of the evidence does not substantially outweigh its probative value. *Id.*; *United States v. Smith*, 49 F.3d 475, 478 (8th Cir. 1995); *United States v. Sykes*, 977 F.2d 1242, 1246 (8th Cir. 1992).

In the instant case, the drug-related evidence was related to White's firearm possession. Our court recognizes the known correlation between drug dealing and weapons, and accepts that they are closely and integrally related to the issue of

---

[5] Fed. R. Evid. 404(b) provides:

Evidence of other crimes, wrongs, or act is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

possession of a firearm. *See Smith*, 49 F.3d at 478; *Simon*, 767 F.2d at 527. We allow a factfinder to infer a connection between drugs and firearms when a defendant distributes quantities of illegal drugs because firearms are viewed as a tool of the trade for drug dealers. *United States v. Regans*, 125 F.3d 685, 686 (8th Cir. 1997). The fact that drugs were found in White's possession bears some relevance to the issue of whether White was in possession of the firearm. Testimony and evidence presented at trial showed that White used the firearm to protect himself and the drugs found in his residence; the keys used to unlock the cabinet were found on White's person; and the drugs found inside the cabinet were with the firearm, indicating that the drugs and firearm were integrally related. The potential unfairness of admitting evidence of White's drug possession was outweighed by its probative value. We find no abuse of discretion.

## C.

Finally, White contends that he was denied a fair trial because the jury instructions misidentified the firearm found in White's possession. Specifically, White contends that the jury was unable to answer whether White possessed the *specific* firearm alleged in violation of 18 U.S.C. § 922(g)(1).[6] The jury instructions included a definition of a felon in possession of a firearm as follows:

> . . . a defendant herein, having been convicted previously of crimes punishable by a term of imprisonment exceeding 1 year under the laws of the State of Missouri, did knowingly and intentionally possess a firearm to wit: a Sturm Ruger .38 revolver . . .

---

[6] Section 922(g)(1) criminalizes the knowing possession a firearm by a person who has been convicted in a court of the United States, or of a state or any political subdivision thereof, of a felony, if the firearm was in or affecting interstate or foreign commerce.

-8-

However, the gun recovered during the search of White's residence was a Sturm Ruger .357 revolver.

The trial court has broad discretion to instruct the jury, which will not be disturbed on appeal unless the instructions, taken as a whole, are confusing or misleading in presenting the principles of law applicable to the case. *Feingold v. United States*, 49 F.3d 437, 439 (8th Cir. 1995).

A specific type of firearm possessed by a felon is not an essential element of the offense charged under § 922(g)(1). The elements do not require proof of a specific firearm, but merely require a defendant to knowingly and intentionally possess a firearm. The instructions, therefore, did not misstate the law. We are satisfied that the instructions clearly and properly explained to the jury the legal principles governing the case.

### III.

Accordingly, we affirm the judgment of the district court.

_____